Constance L. CAMERON, et al.

v.

Eugene R. PEPIN.

Supreme Judicial Court of Maine.

Argued Jan. 24, 1992.

Decided July 17, 1992.

Paul F. Macri (orally), Berman & Simmons, Lewiston, for plaintiffs.

Robert B. Hoy (orally), Platz & Thompson, Lewiston, for defendant.

Gerald F. Petrucelli, James B. Haddow, Petrucelli & Martin, and Christopher C. Taintor, Norman, Hanson & Detroy, Portland, for amicus curiae, Maine Medical Center.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

Defendant Eugene R. Pepin appeals a judgment entered in favor of the plaintiffs in the Superior Court (Androscoggin County, *Alexander, J.*) after a jury-waived trial. Pepin argues that the court erred in finding him liable for the plaintiffs' claim of negligent infliction of emotional distress (NIED).[1] We agree and vacate the judgment.

In June 1988 Pepin was involved in an automobile accident in Auburn with the plaintiffs' 26–year–old son, Scott W. Cameron. The plaintiffs were notified of the accident shortly after it occurred and arrived at the Central Maine Medical Center emergency room, to see Scott cut, bloody, and battered. The treating physician told the Camerons that Scott had two broken legs, two broken arms, broken ribs, and a severe brain injury, and that he would probably not survive. After six hours of surgery Scott went to the intensive care unit. From that time on, with only brief breaks, the Camerons stayed with their son until he died, six days later.

The plaintiffs instituted this suit in December 1988, seeking damages for severe emotional distress. At the conclusion of the trial on May 28, 1991, the court ordered judgment in the amount of $125,000 to each of the plaintiffs for the emotional distress they suffered and an additional $5,000 to the plaintiffs for their economic loss. This appeal followed.

The essential issue in this case is whether a person, not at the scene when an accident occurs but who subsequently witnesses the accident victim's pain and suffering, can recover for severe emotional distress against the defendant who negligently caused the accident. We have previously recognized that the victim of negligent conduct has a legally protected interest in his psychic health, with different rules governing recovery depending on whether the plaintiff is characterized as a

---

* McKusick, C.J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

1. The plaintiffs also brought a wrongful death action under 18–A M.R.S.A. § 2–804 (1981 & Supp.1991), which was settled and dismissed by stipulation of the parties.

"direct" victim rather than an "indirect" victim. *See, e.g., Gammon v. Osteopathic Hosp. of Maine, Inc.,* 534 A.2d 1282 (Me. 1987); *Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433 (Me.1982). Resolution of this appeal requires that we analyze, for the first time since *Culbert,* the distinction between direct and indirect victims and determine the scope of the legal duty a defendant owes to an indirect victim.

In jurisdictions recognizing NIED claims, the courts have limited the scope of liability through the application of three basic themes: the impact rule, the zone-of-danger rule, and the foreseeability test. *See id.* at 434. We previously have applied the foreseeability test to the situation involving both a direct victim, *Gammon,* and an indirect victim, *Culbert.* Although analysis in both cases centered on the analytical concept of foreseeability, each decision rested on a distinct and fundamentally different rationale.

In *Culbert* we vacated the dismissal of a complaint setting forth an NIED claim arising from a mother's observation of her baby choking on a foreign object in baby food manufactured by the defendant. Rejecting both the impact rule and the zone-of-danger rule, we adopted the foreseeability test enunciated in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), and held that a plaintiff's psychic injury would be deemed foreseeable, and thus compensable, when the plaintiff i) was present at the scene of the accident, ii) suffered serious mental distress as a result of observing the accident, and iii) was closely related to the victim. *Culbert,* 444 A.2d at 438. We recognized at that time the different and problematic issues raised in negligence analysis involving indirect victims, but nonetheless expressed confidence that the traditional foreseeability concept, *as expressed in Dillon's three-factor test,* would rationally circumscribe the parameters of liability. *Id.* at 436–47.

Five years after *Culbert,* we addressed in *Gammon* the NIED claim of a direct victim. There, in vacating a directed verdict for the defendant, we rejected as "arbitrary" the requirement that a NIED claim must be based on an independent underlying tort and held that proof of negligently inflicted emotional distress itself was sufficient. *Gammon,* 534 A.2d at 1285. Rather than precluding such claims through employment of any artificial devices,[2] we held that the particular claim could be premised on, and limited by, the "traditional tort principle of foreseeability" as expressed in *Culbert. Id.*

Although broadly stated, *Gammon's* adherence to a foreseeability principle necessarily differed from the principle applied in *Culbert,* because *Gammon* involved no examination of the three *Dillon* factors that *Culbert* explicitly analyzed. Nonetheless, despite the necessarily distinct analyses in these cases, the Camerons argue that *Gammon* substantially changed *Culbert's* rationale, removing the need to take a plaintiff's status into account when determining the scope of the duty a defendant owes to potential indirect victims. They contend that, under *Gammon,* whether a defendant owes a duty to a plaintiff is strictly a question of fact, dependent *solely* on the factfinder's determination whether the injury was a reasonably foreseeable consequence of the defendant's negligence. They argue that *any* court-imposed limitation on the scope of a defendant's duty would be an arbitrary and artificial device contrary to *Gammon's* principle. We disagree.

The designation of harm as "foreseeable" gives rise to some confusion in negligence analyses because the question of foreseeability informs both the issue of duty and the issue of proximate cause. *Compare Brewer v. Roosevelt Motor Lodge,* 295 A.2d 647, 651 (Me.1972) (foreseeability of injury is the test of duty) *with Brewer,* 295 A.2d at 652 (foreseeability of injury is the foundational basis of proxi-

---

2. Three such "artificial" devices that we previously have rejected are the impact rule, the zone-of-danger rule, and the necessity for the plaintiff to demonstrate objective symptomatol-

ogy of emotional injury. *See Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433 (Me. 1982); *Wallace v. Coca–Cola Bottling Plants, Inc.,* 269 A.2d 117 (Me.1970).

mate cause). The California Supreme Court recently noted the ambiguous nature of the term, observing that:

> Because a general duty exists to avoid causing foreseeable injury to another, the concept of "foreseeability" enters into both the willingness of the court to recognize the existence of a duty ... and into the determination by a trier of fact whether the specific injury in issue was foreseeable.
>
> [A] court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.
>
> The jury, by contrast, considers "foreseeability" in two more focused, fact-specific settings. First, the jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place. Second, foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury.

*Thing v. La Chusa*, 771 P.2d 814, 819 n. 3 (1989) (quoting *Ballard v. Uribe*, 715 P.2d 624, 628 n. 6 (1986)) (emphasis in original). Thus, notwithstanding *Gammon*'s broad language, whether one party owes a duty of care to another necessarily involves considerations beyond the factual determination that a particular injury was a foreseeable consequence of some particular conduct. *See, e.g., Howe v. Stubbs*, 570 A.2d 1203 (Me.1990) (prior occurrence of three accidents substantially similar to the instant accident did not give rise to a duty to warn).

■ We have repeatedly recognized the above proposition when asserting that the scope of a defendant's duty is, initially, a matter of law. *Fish v. Paul*, 574 A.2d

1365, 1366 (Me.1990); *Howe*, 570 A.2d at 1203; *Joy v. Eastern Maine Medical Center*, 529 A.2d 1364, 1365 (Me.1987). While the scope of duty owed does raise the question "whether the defendant is under any obligation for the benefit of the particular plaintiff," Prosser, *Law of Torts*, § 53 (4th ed. 1971), *quoted in Joy*, 529 A.2d at 1365, it is not entirely a question of the foreseeable risk of harm but is in turn dependent on recognizing and weighing relevant policy implications. Indeed, in *Trusiani v. Cumberland & York Distributors, Inc.*, 538 A.2d 258 (Me.1988), decided less than three months after *Gammon*, we stated that duty, while premised on foreseeability, rested also on other policy considerations:

> In the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

*Id.* at 261 (quoting Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 15 (1953)). Foreseeability, then, is one consideration among many that must be taken into account when courts engage in a duty analysis. *Cf. Thing*, 771 P.2d at 819 n. 3; *Elden v. Sheldon*, 758 P.2d 582, 586 (1988) (though foreseeability of risk is chief element in determining whether a duty is owed, "policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk").

■ In *Gammon* itself we acknowledged that future cases might compel further evaluation of policy considerations other than those we emphasized in that case. *Gammon*, 534 A.2d at 1286. In general, as was the case in *Gammon*, policy considerations favoring the imposition of liability for an injury resulting from the creation of an unreasonable risk of harm (i.e., factual foreseeability) dominate the analysis. In these circumstances, the issue of liability is properly characterized as a question of fact

to be submitted to the factfinder. The Camerons' argument is troubling, especially in the context of an indirect victim's claim for emotional distress. Commentators have observed that courts have had difficulty applying *Dillon* and "delineating the boundaries of foreseeability" in the context of an NIED claim by an indirect victim. *See generally* Comment, *Elden v. Sheldon—Should Policy Outweigh Foreseeability?*, 1989 B.Y.U.L.Rev. 977, 979 n. 10; Note, *Thing v. La Chusa—Public Policy Demands a Limitation on the Bystander Recovery for Infliction of Emotional Distress*, 17 W.State U.L.Rev. 499, 504–506 (1990). As the California Supreme Court itself came to recognize in retreating from any expansive interpretation of *Dillon:*

> it is clear that foreseeability of the injury alone is not a useful "guidelines" or a meaningful restriction on the scope of the NIED action. The *Dillon* experience confirms ... that "[f]oreseeability proves too much ... [;] although it may set tolerable limits for most types of physical harm, *it provides virtually no limit on liability for nonphysical harm.*"

*Thing*, 771 P.2d at 826 (quoting Rabin, *Tort Recovery For Negligently Inflicting Economic Loss: A Reassessment*, 37 Stan. L.Rev. 1513, 1526 (1985)) (emphasis added).

One policy consideration especially implicated in this case and recognized by the courts in some jurisdictions considering the parameters of an NIED claim is the necessity of avoiding both unlimited liability and liability out of all proportion to culpability. *See, e.g., Wilder v. City of Keene*, 557 A.2d 636, 639 (N.H.1989) (NIED claim of parent who saw injured child in hospital one hour after the accident denied as contrary to policy objective of preventing unlimited liability); *Portee v. Jaffee*, 417 A.2d 521, 527 (N.J.1980) (adhering to the contemporaneous observation requirement in *Dillon* so as to avoid "imposing liability in excess of culpability"). This very concern has resulted in at least one court rejecting altogether the notion of recovery by an indirect victim for an NIED claim. *See Tobin v. Gross-*

*man*, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969) (rejecting *Dillon* because of the problems of foreseeability, the risk of unlimited liability, the factor of an unduly burdensome liability, and the difficulty of obtaining any reasonable circumscription, within tolerable limits required by public policy, of a rule creating liability). We recognize both the serious nature of this concern and the need for some principled limitations on the extent of liability in this area.

Recognition of the competing policy considerations that inform the conclusion whether a duty is owed to a particular plaintiff sufficiently answers the Camerons' contention that *Gammon* decided that any limitation on the scope of liability in an NIED claim would be artificial or arbitrary. Characterizing a rule limiting liability as "unprincipled" or "arbitrary" is often the result of overemphasizing the policy considerations favoring imposition of liability, while at the same time failing to acknowledge any countervailing policies and the necessary compromise between competing and inconsistent policies informing the rule. *See* Pearson, *Liability to Bystanders for Negligently Inflicting Emotional Harm— A Comment on the Nature of Arbitrary Rules*, 34 U.Fla.L.Rev. 477, 481–82 (1982). Although foreseeability is a prerequisite to recovery from a negligent defendant,

> it has never been sufficient in and of itself. Other policy considerations often have been important enough to justify non-liability for foreseeable consequences in some circumstances. Therefore, an exception to liability based upon foreseeability should not be characterized as arbitrary solely because it is an exception. Rather, there must be an assessment of the policies underlying the exception and of how closely the exception fits the policy offered to support it.

*Id.* at 515; *see also Elden*, 758 P.2d at 586. This reasoning supports the conclusion that a decision where to draw a line circumscribing liability need not necessarily be arbi-

trary. Recognizing real differences between classes of potential plaintiffs does not automatically give rise to the arbitrary distinctions that *Culbert* and *Gammon* rejected. *See Portee*, 417 A.2d at 527 (avoiding arbitrary distinctions does not mean that a cause of action exists for all emotional injuries to all close relatives of the victim). Rather, it is precisely these real differences that prevent legal demarcation from being purely arbitrary.

In balancing the competing policy considerations that inform a duty analysis, the *Thing* court observed that:

> It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

*Thing*, 771 P.2d at 826–27. Indeed, authorities cited by the Camerons purportedly in support of their "pure foreseeability" argument recognize the mandate of policy considerations requiring some limitation on the scope of liability for psychic injury to indirect victims. In *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295, 1302 (1978), the court allowed recovery on facts similar to the instant case, but recognized the need for some mechanism, albeit unidentified, to establish the limits of liability for emotional injury: "In some instances it will be clear that the question is properly one for the trier of fact, while in others the claim will fall outside the range of circumstances within which there may be liability." Massachusetts courts have come to focus on the time when the plaintiff became aware of the injury as the limiting factor. *See Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.App. 645, 461 N.E.2d 256, 260 (1984) (first learning of injury three years after occurrence precludes recovery). *See also Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038 (Alaska 1986) (replacing requirement of contemporaneous observation of the accident with requirement of seeing victim at the scene). *Compare Masaki v. General Motors Corp.*, 71 Haw. 1, 780 P.2d 566 (1989) (recovery allowed to parent on same island as accident victim at time of accident) *with Kelley v. Kokua Sales & Supply, Inc.*, 56 Haw. 204, 532 P.2d 673 (1975) (recovery precluded to parent in California at time of injury); *compare also Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979) (recovery allowed to parent who did not see accident but saw victim at accident scene) *with Wilder v. Keene*, 131 N.H. 599, 557 A.2d 636 (1989) (no recovery allowed to parent who saw victim at hospital one hour after the accident).

The foregoing analysis supports our rejection of the pure foreseeability standard urged by the Camerons and supported by a broad reading of *Gammon*. Adopting the plaintiffs' expansive view

> would extend judicial redress far beyond the bounds of the emotional interest entitled to protection. To avoid imposing liability in excess of culpability, the scope of recovery must be circumscribed to negligent conduct which strikes at the plaintiff's *basic* emotional security.

*Portee*, 417 A.2d at 527 (emphasis added). That is, the scope of the defendant's duty should be limited to the emotional vulnerability that arises in parents upon actually witnessing their child receiving an injury. The impact of such an experience is surely qualitatively and quantitatively different from the distress occasioned by a subsequent visit to the hospital. We are persuaded by the reasoning of the *Thing* court to resist any expansive application of the standard adopted in *Culbert* and thus reaffirm that a plaintiff must demonstrate that he i) was present at the scene of the accident, ii) suffered serious mental distress as a result of contemporaneously perceiving

the accident, and iii) was closely related to the victim. *See Culbert*, 444 A.2d at 438; *cf. Purty v. Kennebec Valley Medical Center*, 551 A.2d 858, 860 (Me.1988) (contemporaneous involvement in incident sufficient to support NIED complaint).

The entry is:

Judgment vacated.

Remanded to the Superior Court for entry of a judgment in favor of the defendant.

All concurring.