STATE OF MAINE                                          SUPERIOR COURT
Sagadahoc, ss.                                          A,ı|H · ᔕ/)(ᵤ ~ /ᵏᵇ/ᵃᵒᵢᵢ


LINDA MIDDLETON

                        Plaintiff

        v.                                      Docket No. BATSC-CV-10-35

JED MIDDLETON

                        Defendant


## DECISION AND ORDER

Plaintiff Linda Middleton filed this civil action against Defendant Jed Middleton for the intentional infliction of emotional distress she incurred as a result of the Defendant's sexual abuse of her daughter.

On August 10, 2010, Plaintiff was granted an *ex parte* order approving writs of attachment and attachment upon trustee process against property of Defendant in the amount of $200,000.00. The Defendant's motion to dissolve the attachment order and motion to dismiss are before the court for decision.

### Background

The facts and allegations of this case, as stated in the complaint, are as follows: Plaintiff, Linda Middleton ("Plaintiff") and Defendant, Jed Middleton ("Defendant"), were married from 1992 to 2000. The parties cohabitated for approximately five years prior to their marriage. Plaintiff's daughter from a prior marriage, Amee Cedergren (d.o.b. 12/02/1985), lived with the parties during her minority.

The Plaintiff alleges that during the course of their marriage she informed the Defendant that she was sexually abused as a child. She also claims that, as a result of being abused as a child,

Plaintiff experienced serious mental health problems during her marriage to Defendant, involving one attempt at suicide and several instances of inpatient psychiatric treatment.

In May of 2009, Plaintiff's daughter revealed to the Plaintiff that the Defendant had sexually abused her from 1992 through 1997. In January 2010, the State brought criminal charges against the Defendant arising out of the allegations made by Amee Cedergren. At the conclusion of the trial in June 2010, the Defendant was convicted of fifteen criminal charges of Unlawful Sexual Contact, 17-A M.R.S.A. § 255-A(1)(E), and one count of Gross Sexual Assault, 17-A M.R.S.A. § 253-A(1)(E). *State v. Jed Middleton,* Sag. Super. Ct. Docket No. BATSC-CR-2010-23.

In the present civil case, the Plaintiff asserts that she is entitled to damages for intentional infliction of emotional distress and punitive damages arising out of the conduct of which Defendant was convicted. She asserts that the Defendant was fully aware of her mental health problems and treatment history when he sexually abused her daughter. The Plaintiff also contends that the Defendant concealed his history of sexual misconduct involving minors during their marriage.

The Plaintiff argues that the Defendant's abuse of her daughter was extreme and outrageous, and intentional or reckless conduct that caused her serious emotional distress that no reasonable person could be expected to endure. Alternatively the Plaintiff contends that the Defendant was substantially certain that his conduct would cause the Plaintiff serious emotional distress. The Plaintiff also asserts that by abusing her daughter while acting as a caretaker and having full knowledge of Plaintiff's struggles with sexual abuse, the Defendant acted with ill will towards the Plaintiffs such that malice may be implied.

The Plaintiff's *ex parte* motion for attachment for $200,000 was granted on August 10, 2010. In October 2010, the Defendant filed a motion to vacate and dissolve the attachment order and a motion to dismiss, arguing that the Plaintiff failed to state a claim for which relief can be granted. The Plaintiff filed an opposition to the motion to dismiss on November 12, 2010.

2

<u>Discussion</u>

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. "Dismissal of a civil action is proper when the complaint fails 'to state a claim upon which relief can be granted.'" *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676, 679 (citing M.R. Civ. P. 12(b)(6)).

In determining whether a motion to dismiss should be granted, the court considers "the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832. The facts alleged are treated as admitted, and they are viewed "in the light most favorable to the plaintiff." *Id.* The court should dismiss a claim only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he [or she] might prove in support of his [or her] claim." *Id.* (quoting *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246).

*Intentional Infliction of Emotional Distress*

The Plaintiff's only claim is for intentional infliction of emotional distress (IIED), although she does argue in the alternative that the Defendant acted recklessly[1] and should have known that the sexual molestation of her child would result in her severe emotional distress. For purposes of this discussion, the Plaintiff's claims of intentional, or in the alternative reckless, infliction of emotional distress are considered together, because they are both subject to the limitations discussed in detail below regarding direct victim and bystander liability.

The Law Court has adopted the Restatement's rule of liability for IIED claims. *See Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me. 1979) (first recognizing IIED claims)(citing RESTATEMENT (SECOND) TORTS § 46(1) (1965)). In order to succeed in an action for IIED a

---

[1] A person acts recklessly if he knows or should know that his conduct creates an unreasonable risk of harm to another person and the unreasonableness of his actions exceeds negligence. *See Curtis v. Porter*, 2001 ME 158, ¶ 13, 784 A.2d 18, 23.

3

plaintiff must demonstrate that: (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct. *See Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847; *Henriksen v. Cameron*, 622 A.2d 1135, 1139 (Me. 1993).

However, Maine law limits standing to assert IIED claims only to the direct victims of the tortious conduct alleged, or to bystanders who were actually present at the time of the tortious conduct and were thus foreseeably distressed by it. *See Latremore v. Latremore*, 584 A.2d 626, 631 (Me. 1990); *cf. Cameron v. Pepin*, 610 A.2d 279, 284-55 (Me. 1992) (NIED claim).

Conduct of the kind for which Defendant was convicted—sexual offenses against a child—fits within any rational definition of extreme, outrageous, atrocious and utterly intolerable conduct. Further, although the issue is not before the court at this point, it seems likely that the Defendant's conviction beyond a reasonable doubt would preclude him from re-litigating the issue of whether he engaged in such conduct, at least on the dates alleged in the 16 charges.

Defendant's Motion to Dismiss does not dispute any of the foregoing. It argues that the Plaintiff's claim must nonetheless be dismissed because Plaintiff was neither a direct victim of Defendant's tortious conduct nor a bystander with standing to recover for her alleged harm.

For the reasons stated below, although the court does "not lightly dismiss the harm caused by the sexual abuse of children," *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 27, 738 A.2d 839, 848, the limitations that Maine law imposes on standing to assert claims for IIED require the court to grant the Defendant's motion.

*IIED Standing as a Direct Victim*

A fair review of the complaint compels the conclusion that the Plaintiff was not a direct

4

victim of the Defendant's tortious actions. The Law Court has discussed the distinction between direct and indirect victims in the context of negligent infliction of emotional distress (NIED) claims:

> A plaintiff is a direct victim if she was the object of the defendant's negligent conduct. *See, e.g., Gammon v. Osteopathic Hosp. Of Me., Inc.*, 534 A.2d 1282 (Me. 1987) (plaintiff who discovered severed human leg in bag that he thought contained his recently deceased father's belongings was direct victim of hospital's and funeral home's alleged negligent conduct). In contrast, a plaintiff is an indirect victim if the claimed negligence underlying the NIED claim was directed not at her, but instead at someone she loved and to whom she was close. *See Nelson v. Flanagan*, 677 A.2d 545, 547 n.3 (Me. 1996); *see, e.g., Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 438 (Me. 1982) (mother who observed her child choking on a foreign object in baby food manufactured by defendant was indirect victim of defendant's negligent conduct).

*Michaud v. Great Northern Nekoosa Corp.*, 1998 ME 213, ¶ 16, 715 A.2d 955, 959 (citing *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, ¶ 6, 711 A.2d 842, 844).

The court sees no reason not to apply the same principles to an IIED claim.

Here, the conduct at issue was clearly directed at the Plaintiff's daughter, not at the Plaintiff. The Plaintiff has not alleged that the Defendant intentionally abused the Plaintiff's daughter for the purpose of causing the Plaintiff harm. Nor would such an allegation be plausible, given that the Defendant concealed the abuse from the Plaintiff while it was happening and for 12 years thereafter. Therefore, she does not have an IIED claim on the basis that she was a direct victim of the Defendant's conduct.

*Bystander Recovery for IIED*

In support of her claim that she has standing as a bystander, Plaintiff argues that the facts

5

here are compelling enough to establish bystander liability even though the Plaintiff was not present at the time of the abuse.

The court finds the Plaintiff's claim to have bystander standing pursuant to the Restatement unpersuasive.[3] The RESTATEMENT (SECOND) OF TORTS §46(2) reads:

> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
> (a) to a member of such person's immediate family *who is present at the time*, whether or not such distress results in bodily harm, or
> (b) to any other person *who is present at the time,* if such distress results in bodily harm.

RESTATEMENT (SECOND) TORTS § 46(2)) (emphasis added).

The Law Court has held that *section* 46(2) of the Restatement "is designed to apply in a situation where the intent to cause harm is directed toward a third party and the plaintiff is injured indirectly by watching the [third] party suffer." *Latremore v. Latremore*, 584 A.2d 626, 631 (Me. 1990).[4]

The actual presence requirement for bystander liability is further clarified in the comment to *section* 46(2) of the Restatement:

> Conduct directed at a third person. Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife,

---

[3] The Plaintiff cites to five decisions from other jurisdictions in support of her argument. *Delia v. Torres*, 134 Cal. App. 3d 471, 482-84, 184 Cal. Rptr. 787, 794-95 (1982) (finding the Plaintiff had a cause of action for IIED as "the violation and rape of one's wife, particularly by a friend, would have [] profound and extreme emotional consequences;" however, language in the opinion indicates that the court treated the husband as a direct victim); *R.D. v. W.H.,* 875 P.2d 26, 34-35 (Wyo. 1994) (allowing the Plaintiffs' IIED claim because they viewed the *immediate* aftermath of the decedent's suicide even though they did not witness the negligent acts which caused the suicide); *Croft by Croft v. Wicker*, 737 P.2d 789, 793 (Alaska 1987) (allowing an IIED claim where the Defendant's "alleged conduct was the intentional sexual abuse of a minor child while a guest at her parents' home, with full knowledge that they were in close proximity of the incident"); *Hatch v. Davis,* 102 P.3d 774, 786-87 (Utah 2004) (noting "that the general rule favoring presence at the time of the outrageous conduct has only been held inapplicable under particularly compelling circumstances"); *Schurk v. Christensen,* 497 P.2d 937, 940-41 (Wash. 1972) (Plaintiff's claim barred because "the mother was not near the scene of the molestations; she did not observe these injuries occurring to her daughter, and learned of the occurrences at a later date from a third person"). In light of the twelve-year gap between the period during which the abuse occurred and Plaintiff's discovery of it, the court concludes that these decisions are inapposite.

[4] Although addressed in the context of NIED claims, in *Cameron v. Pepin,* 610 A.2d 279, 284-55 (Me. 1992), the Law Court held that in order to recover under a theory of bystander liability for a NIED claim, "a plaintiff must demonstrate that he i) was present at the scene of the accident, ii) suffered serious mental distress as a result of contemporaneously perceiving the accident, and iii) was closely related to the victim." *Id.*

6

the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. *The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred.* The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford. The Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required.

*Id. cmt. l* (emphasis added). Here, as in the example provided by the Restatement, the Plaintiff was not aware of the abuse until many years after it occurred. Therefore, the Plaintiff lacks standing to assert a claim of IIED on a theory of bystander liability.

## Conclusion

Though the Plaintiff's distress is no doubt real and justified, and though her allegations would very likely satisfy the IIED elements, she lacks standing under either the direct victim or bystander recovery standards the Law Court has adopted from the Restatement. It is therefore ORDERED that the Defendant's motion to dismiss and motion to dissolve and vacate the August 10, 2010 order of attachment are hereby granted. This action shall be and hereby is dismissed.

Pursuant to M.R. Civ. P. 79(b), the Clerk is hereby directed to incorporate this Decision by reference in the docket.

Dated 6 January 2011

A. M. Horton
Justice, Superior Court