STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-206

WILLIAM PARKER AND DENISE
PARKER, individually and as the
Personal Representatives of the
ESTATE OF LUCAS PARKER,

       Plaintiffs

v.

SUSAN SCHRAFT, M.D individually
and as an employee of X-RAY
PROFESSIONAL ASSOCIATION,
its employees and agents,

       Defendants

ORDER

RECEIVED & FILED

JUN 0 3 2015

ANDROSCOGGIN
SUPERIOR COURT

Plaintiffs William and Denise Parker have filed an Amended Complaint for wrongful death and conscious pain and suffering against Dr. Susan Schraft and X-Ray Professional Association following the death of their son, Lucas Parker.[1] Defendants have filed a Motion for Summary Judgment, which due to amendments to the Complaint, now concerns only Mrs. Parker's bystander liability claim.[2] Plaintiffs have opposed Defendants' Motion. The court has reviewed the parties' filings and held a hearing on the Motion on February 4, 2015.

I.     Factual Background

---

[1] The court notes that there have been some amendments to the Complaint, which affect the issues to be decided through this Motion. When Plaintiffs first filed their Complaint, it included claims for I) medical negligence, II) wrongful death, and III) bystander liability as applied to both Plaintiffs. The wrongful death claim included a loss of earning capacity claim, which is no longer a part of the Amended Complaint. The Amended Complaint has removed the separate count for bystander liability, has included the bystander claim under the wrongful death claim, and asserts it only as to Mrs. Parker.

[2] The Defendant's Motion for Summary Judgment as applied to the original Complaint sought summary judgment on any claim for damages in Count I of the Complaint (the negligence claim) aside for damages for Lucas's pre-death conscious pain and suffering and any medical bills that may have been incurred between April 17th and April 23, 2009. The Defendants also sought summary judgment on Plaintiff's pecuniary loss claim and any claim for emotional distress damages above and beyond the limitations set forth in the Wrongful Death Act. Lastly, the Defendants sought summary judgment on the entirety of the bystander liability claim.

The following facts are gathered from the Defendants' Statement of Material Facts, the Plaintiffs' Opposing and Additional Statement of Material Facts, and the Defendants' Reply. On April 17, 2009, seven-year-old Lucas Parker went to the emergency room at Central Maine Medical Center ("CMMC") with complaints including: daily headaches, neck pain, and an episode of vomiting. (S.M.F. ¶ 1-2.) Denise Parker was present at CMMC on April 17th, while William Parker was not. (A.S.M.F. ¶ 1; R.S.M.F. ¶ 1; S.M.F. ¶ 34; O.S.M.F. ¶ 34.) Dr. Lisa Torraca evaluated Lucas and ordered a head CT without contrast. (S.M.F. ¶ 3; O.S.M.F. ¶ 3.)

Defendant Dr. Susan Schraft interpreted the CT scan, and in her report she indicated that the exam was negative. (S.M.F. ¶ 4.) She authored her report at CMMC on April 17th. (A.S.M.F. ¶ 2; R.S.M.F. ¶ 2.)

That same day, after the report was drafted, Dr. Torraca reviewed the results of the report with Mrs. Parker and came to the diagnosis that the etiology of Lucas's headaches were unclear. (A.S.M.F. ¶ 3; R.S.M.F. ¶ 3.) Dr. Torraca found Dr. Schraft's report that there was no bleeding reassuring. (S.M.F. ¶ 5.) She also stated that it indicated that there was no mass causing a shift or obstruction. (S.M.F. ¶ 5.) Following her examination and work-up, Dr. Torraca diagnosed Lucas with headaches and hypertension. (S.M.F. ¶ 6; O.S.M.F. ¶ 6.) She instructed that Lucas receive Tylenol as needed, follow up with his physician the next week, and return to the hospital in case of worsening symptoms. (S.M.F. ¶ 6.; O.S.M.F. ¶ 6.)

Mrs. Parker has stated that she felt Lucas's headaches were not taken seriously, and that Dr. Torraca did not explain why Lucas could not move his head off the pillow and why he was vomiting. (A.S.M.F. ¶ 4; R.S.M.F. ¶ 4.)

Lucas returned to the CMMC emergency room on April 18th, and he was seen by Dr. John McGoldrick. (S.M.F. ¶ 7.; O.S.M.F. ¶ 7.) While Dr. McGoldrick cannot recall whether or not he looked at the CT scan from April 17th, Dr. McGoldrick testified that he conducted a detailed neurological exam. (O.S.M.F. ¶ 8; S.M.F. ¶ 9.) Dr. McGoldrick determined that Lucas's neurological exam was normal and that his symptoms were completely resolved through hydration and Zofran. (S.M.F. ¶ 10; O.S.M.F. ¶ 10.) He decided that there was no need for a repeat CT scan, Lucas had had a normal CT scan the previous day, and Dr. McGoldrick noted that his symptoms had resolved. (S.M.F. ¶ 11; O.S.M.F. ¶ 11.)

On April 19th, Lucas again returned to the CMMC emergency room and was evaluated by Dr. Lawrence Oliver. (S.M.F. ¶ 12; O.S.M.F. ¶ 12.) Lucas complained of a worsening headache and pain behind his left ear and he was admitted to the hospital for observation. (S.M.F. 13; O.S.M.F. ¶ 13.)

Following his admission, Dr. Jeffrey Lynds evaluated Lucas and made a differential diagnosis of tension headache versus migraine headache, endocrine disorder, pheochromocytoma, psuedotumor cerebri, or infectious etiology. (S.M.F. ¶ 14; O.S.M.F. ¶ 14.)

2

Dr. Lynds decided to admit Lucas for observation, monitor Lucas's blood pressure, consider a lumbar puncture, provide hydration, and administer Ketorolac, Tylenol, morphine (if needed), and Zofran. (S.M.F. ¶ 15; O.S.M.F. ¶ 15.) After one night in the hospital, Lucas was discharged home on April 20, 2009. (S.M.F. ¶ 16; O.S.M.F. ¶ 16.) The etiology of Lucas's headaches was still unclear. (S.M.F. ¶ 17.)

On April 21, 2009, Heidi Toews, a Nurse Practitioner at Central Maine Pediatrics, saw Lucas. (S.M.F. ¶ 18.) Lucas presented with severe headaches, nausea, vomiting, which occurred through the night, and new onset of dizziness. (S.M.F. ¶ 18; O.S.M.F. ¶ 18.) Following her evaluation, Nurse Practitioner Toews determined that Lucas had a chronic migraine and referred Lucas to Dr. Rioux, a pediatric neurologist, for an MRI. (S.M.F. ¶ 19; O.S.M.F. ¶ 19.)

That evening, rescue was called to Lucas's home, and EMS found Lucas in cardiopulmonary arrest. (S.M.F. ¶¶ 20-21; O.S.M.F. ¶¶ 20-21.) He was ultimately transported to Maine Medical Center for evaluation. (S.M.F. ¶¶ 20-21; O.S.M.F. ¶¶ 20-21.) At Maine Medical Center, a head CT scan was performed on Lucas, which was read by Dr. Umesh Sarma. (S.M.F. ¶ 22; O.S.M.F. ¶ 22.) Dr. Sarma's CT scan report does not mention a tumor. (S.M.F. ¶ 23; O.S.M.F. ¶ 23.) Lucas remained comatose during the entirety of his 36-hour hospital stay at MMC with little neurological function. (S.M.F. ¶ 24; O.S.M.F. ¶ 24.) He died on April 23, 2009. (S.M.F. ¶ 24; O.S.M.F. ¶ 24.) At the time of Lucas's death, the etiology of Lucas' sudden deterioration and code remained unclear. (S.M.F. ¶ 25; O.S.M.F. ¶ 25.) The cause of Lucas's deterioration was determined at the autopsy. (S.M.F. ¶ 26.) The pathologist's report describes a "'small'", "'soft'", 3 x 2 cm necrotic tumor, which was subsequently identified as a medulloblastoma. (S.M.F. ¶ 27.)

Plaintiffs have alleged that Defendants Dr. Schraft and X-Ray Professional Association were negligent. While Mrs. Parker was present at CMMC during the period when Plaintiffs allege Dr. Schraft was negligent, Mrs. Parker was not in the room when Dr. Schraft read the CT scan and drafted her report. (S.M.F. ¶ 33; O.S.M.F. ¶ 33.) Accordingly, the parties dispute whether Mrs. Parker witnessed Dr. Schraft's alleged negligence. (S.M.F. ¶ 33; O.S.M.F. ¶ 33.)

II.    Standard

"Summary judgment is appropriate when the record reveals no issues of material fact in dispute. A fact is material if it has the potential to affect the outcome of the case." *Lepage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629 (citations omitted).

The Law Court has held that "[s]ummary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18; *see also Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757. If

3

"a defendant moves for summary judgment, the plaintiff 'must establish a *prima facie* case for each element of her cause of action' that is properly challenged in the defendant's motion." *Curtis*, 2001 ME 158, ¶ 8, 784 A.2d 18 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842); *see also Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.

III.    Discussion

In *Curtis v. Porter*, the Law Court noted that liability for claims of negligent infliction of emotional distress is "much more limited" than for claims of intentional infliction of emotional distress. 2001 ME 158, ¶ 17, 784 A2d 18. To prove negligent infliction of emotional distress a plaintiff must demonstrate: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Id.* ¶ 18. The Law Court noted, however, that it is difficult for plaintiffs to establish duty, since "there is no . . . general duty to avoid negligently causing emotional harm to others." *Id.* The Law Court has, however, "recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed." *Id.* ¶ 19. To prevail on a negligent infliction of emotional distress claim, a plaintiff must also show "proof of severe emotional distress." *Id.* ¶ 20.

Mrs. Parker has brought her claim against the Defendants for damages under the Maine Wrongful Death Act for the severe emotional distress she suffered as a bystander. In *Culbert v. Sampson's Supermarket, Inc.*, 444 A.2d 433, 438 (Me. 1982.), the Law Court held that "a bystander may recover damages for serious mental distress foreseeably resulting from witnessing another person harmed by the tortfeasor's negligent act." In *Cameron v. Pepin*, the court found that liability for indirect victims should be limited based upon policy considerations and rejected a pure foreseeability standard. 610 A.2d 279, 283-84 (Me. 1992). The Law Court stated that it would "resist any expansive application of the standard adopted in *Culbert* and thus reaffirm that a plaintiff must demonstrate that he i) was present at the scene of the accident, ii) suffered serious mental distress as a result of contemporaneously perceiving the accident, and iii) was closely related to the victim." *Cameron*, 610 A.2d at 284-285. *In Nelson v. Flanagan*, the Law Court described its rejection of a pure foreseeability standard noting "the need for courts to consider competing policy arguments in their determinations of the extent of a defendant's duty." 677 A.2d 545, 547-548 (Me. 1996). "Foreseeability is but one factor to be weighed by *courts* in their determination of a defendant's duty." *Id.* at 547.

4

In *Nelson*, where a woman was misdiagnosed at the hospital and subsequently released home where she later died, the court denied the NIED claims of her husband and son, because the husband had not contemporaneously perceived his wife's misdiagnosis at the hospital, and the son was not actually present at the hospital. 677 A.2d at 546, 548. The court parsed through the husband's deposition testimony[3], and determined, "Because Alfred, Sr.'s, after-the-fact emotional distress is not the result of an immediate perception of Flanagan's alleged misdiagnosis he does not come within the class of plaintiffs who, pursuant to *Cameron*, are foreseeable indirect victims of a defendant's negligence." *Id.* at 548.

Defendants argue that Mrs. Parker cannot show bystander liability under the set of facts present in this case. While Mrs. Parker was closely related to the victim, Mrs. Parker cannot demonstrate that she "suffered serious mental distress as a result of contemporaneously perceiving the accident." *Cameron*, 610 A.2d at 284-285. Mrs. Parker's statement that she was in the hospital emergency room at the same time Lucas's scan was read, is not tantamount to stating she was present and "'contemporaneously perceive[ed]'"the negligence that is the basis for her claim. *Id.* Even, viewing her case in the most favorable light, if the court were to state that her presence in the emergency room is sufficient to satisfy the first factor of "presence", which would be a stretch since Mrs. Parker did not observe Dr. Schraft read or interpret the CT scan, Mrs. Parker still cannot show contemporaneous perception. *See Id.*

Mrs. Parker has attempted to argue that she suffered significant distress because Dr. Schraft and Dr. Torraca's findings failed to explain Lucas's pain and symptoms. (*See* A.S.M.F. ¶ 5.) Her citation to the record only provides, however, that she felt Dr. Torraca was not taking them seriously, that Dr. Torraca only provided that the CAT scan was normal and failed to explain the cause of Lucas's symptoms, and that she questioned Dr. Torraca discharging them when she had failed to explain what was wrong with Lucas. (*See* A.S.M.F. ¶ 5; R.S.M.F. ¶ 5.) The citation shows that over time she felt that the doctors were not taking the Parkers or Lucas's symptoms seriously, that she felt that they were negligent, that she felt they should not have been sent home, that she thought they should have performed additional CAT scans, which she

---

[3] The court's examination of Alfred's testimony included:

> At his second deposition in 1990 Alfred, Sr., stated that his distress today is related to the loss of his wife, not anything having to do with what happened in the emergency room. In response to a question whether he was going through any emotional distress while at the emergency room Alfred, Sr., stated "I don't know. I wasn't until he decided to send her home." Conversely, Alfred, Sr., did say that when he thinks back about what happened he thinks Joyce should have been admitted, and that the defendants' failure to admit her causes him emotional stress.

*Nelson*, 677 A.2d at 548.

represents that they asked for, but the citation does not show that on April 17, 2009, Mrs. Parker experienced significant distress because of Dr. Schraft's actions. (*See* A.S.M.F. ¶ 5; Pl.'s Ex. 1, 77:9-78:25.)

The court finds Plaintiffs' policy argument that radiologists should not be shielded from liability simply because they perform their work in an area where patients and their families cannot see them compelling. If Plaintiff had presented evidence that Mrs. Parker immediately perceived a problem with Dr. Schraft's reading of the CT scan and experienced distress, then perhaps Plaintiff's claim would have been able to survive summary judgment. Part of the problem is one of chronology. Dr. Schraft's reading of the CT scan occurred on the first day that Lucas was brought into the hospital, April 17, 2009. In the record, Mrs. Parker stated that they requested an additional CT scan. (Pl.'s Ex. 1, 77:13-16.) It is unclear when this request was made, however, and there is nothing to suggest that this request was made on April 17, 2009. There is nothing in the record to suggest that Mrs. Parker immediately perceived a problem with Dr. Schraft's reading of the CT scan, nor as the Defendants have argued, would Mrs. Parker have been able to obviously perceive that Dr. Schraft's interpretation of the CT scan was negligent. She would have needed extensive medical knowledge to do so. As the California Supreme Court noted in a bystander liability action, "Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders." *Bird v. Saenz*, 51 P.3d 324, 329 (Cal. 2002).

The facts of this case are devastating. The court has nothing but the utmost sympathy for Mr. and Mrs. Parker, parents who lost a very young child in a heartbreaking manner. Maine, however, has established a very high threshold for bystander liability actions. Mrs. Parker simply cannot meet the requirements of the three-part test for bystander liability actions, in particular, the requirement of contemporaneous perception.

Accordingly, the court **ORDERS** that Defendants' Motion for Summary Judgment as to Plaintiffs' bystander liability claim is GRANTED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 6/3/15

MaryGay Kennedy
Justice, Superior Court

6

WILLIAM A PARKER - PLAINTIFF

Attorney for: WILLIAM A PARKER
DANIEL LILLEY  - RETAINED
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

**DOCKET RECORD**

Attorney for: WILLIAM A PARKER
ANDREW GRAHAM  - RETAINED
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

DENISE F PARKER  - PLAINTIFF OBO

Attorney for: DENISE F PARKER
DANIEL LILLEY  - RETAINED
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

Attorney for: DENISE F PARKER
ANDREW GRAHAM  - RETAINED
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

LUCAS A PARKER  ESTATE OF  - MINOR PLAINTIFF
Attorney for: LUCAS A PARKER  ESTATE OF
DANIEL LILLEY - RETAINED 12/01/2011
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

Attorney for: LUCAS A PARKER  ESTATE OF
ANDREW GRAHAM - RETAINED 09/17/2014
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

vs
CENTRAL MAINE MEDICAL CENTER OUT - DEFENDANT

Attorney for: CENTRAL MAINE MEDICAL CENTER OUT
CHRISTOPHER NYHAN  - RETAINED 11/29/2011
PRETI FLAHERTY BELIVEAU PACHIOS LLP
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


SUSAN SCHRAFT  - DEFENDANT

Attorney for: SUSAN SCHRAFT
MARK LAVOIE  - RETAINED 11/30/2011
NORMAN HANSON & DETROY LLC
TWO CANAL PLAZA
PO BOX 4600
PORTLAND ME 04112-4600


Attorney for: SUSAN SCHRAFT
JENNIFER A RUSH  - RETAINED 02/10/2014
NORMAN HANSON & DETROY LLC
TWO CANAL PLAZA
PO BOX 4600
PORTLAND ME 04112-4600


XRAY PROFESSIONAL ASSOCIATION - DEFENDANT

Attorney for: XRAY PROFESSIONAL ASSOCIATION
MARK LAVOIE  - RETAINED 11/30/2011
NORMAN HANSON & DETROY LLC
TWO CANAL PLAZA
PO BOX 4600
PORTLAND ME 04112-4600


Attorney for: XRAY PROFESSIONAL ASSOCIATION
JENNIFER A RUSH  - RETAINED 02/10/2014
NORMAN HANSON & DETROY LLC
TWO CANAL PLAZA
PO BOX 4600
PORTLAND ME 04112-4600


CENTRAL MAINE MEDICAL CENTER PEDIATRICS OUT - DEFENDANT

Attorney for: CENTRAL MAINE MEDICAL CENTER PEDIATRICS OUT
CHRISTOPHER NYHAN  - RETAINED 11/29/2011
PRETI FLAHERTY BELIVEAU PACHIOS LLP
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


Filing Document: NOTICE OF CLAIM          Minor Case Type: MEDICAL MALPRACTICE
Filing Date: 12/01/2011

## Docket Events:

12/01/2011 FILING DOCUMENT - NOTICE OF CLAIM FILED ON 12/01/2011