## STEPHEN WATSON *vs. Proprietors of* LISBON BRIDGE.

Where a corporation, established with power to erect a bridge across a river and take toll of passengers, adopted as part of their bridge a way made by individuals, of a few rods extent, being the only entrance from the public highway to the bridge; and a traveller on passing over this way to the bridge where he paid toll, had his horse injured from a defect in such way; *it was held,* that the traveller was entitled to recover of such corporation the damage sustained thereby.

And if the traveller expend money in a prudent, but ineffectual, attempt to cure the horse, which finally died in consequence of the injury, he may recover it of the corporation in addition to the value of the horse.

A party may prove what a deceased witness had testified to, at a former trial of the same action.

A verdict will not be set aside merely because immaterial testimony has been erroneously admitted at the trial.

A stockholder in a toll bridge corporation is not a competent witness for that corporation on the ground of interest; and the provisions of the *Rev. Stat.*, *ch.* 87, "for admitting *inhabitants* of towns, and *certain other corporations* as witnesses," do not render such stockholder a competent witness for the corporation.

THIS was an action of the case, alleging that a horse of the plaintiff through a defect in the bridge was wounded; that an attempt was made to cure the horse, but that it finally died in consequence of the injury. The defendants erected their bridge in *September*, 1832, and as the end of the planked bridge did not adjoin on any road regularly laid out, in the following *November* a convenient passage way from the public highway to the bridge, a distance of about twenty rods, was made by sundry persons, among whom were several members of the bridge corporation. This was the only way of approaching that end of the bridge, and next to the bridge the way was wharfed up against the bridge, and adjoined to it. The defendants adopted this as their passage to the bridge, and had repaired it. In *December*, 1833, the plaintiff was passing with his horse along this way to go over the bridge, and at the distance of four or five rods from the water of the river, through a defect in the way, the horse fell and was badly injured, but the plaintiff proceeded and passed the bridge paying his toll there. After some dollars had been expended in attempting a cure, the horse died by reason of the injury thus sustained. In the course of the trial, the

plaintiff proposed to prove what a witness, now deceased, had tes-
tified on a former trial, to which the counsel for the defendants
objected; but the objection was overruled by *Emery J.*, presiding
at the trial, and the evidence was admitted. The defendants also
objected to shewing what individual members of the corporation
did, or proving by them that they were acting in behalf of the cor-
poration, and offered to exhibit their books. This objection was
also overruled. The defendants also moved for a nonsuit, inasmuch
as the plaintiff by his own showing had not sustained any injury
upon the bridge, but upon a way leading to it. The Judge declined
to order a nonsuit. The defendants read in evidence a copy of a
warrant signed by the selectmen of *Durham*, within the limits of
which this way was, containing an article to see whether the town
would lay out this way, as a town road, and a petition to the
County Commissioners to have it laid out, as a county road; but it
did not appear, that any proceedings were had thereon. The de-
fendants offered individuals, owning shares in the corporation, as
witnesses to prove, that the way was made and maintained by indi-
vidual subscription, and not by the corporation. This was objected
to, and rejected by the Judge. The bridge itself was well made and
safe. The jury found a verdict for the plaintiff, and included in the
damages found the sum of fifteen dollars for expenses, proved to
have been paid by the plaintiff in the attempted cure of the horse.
The verdict was to be set aside, if the rulings of the Judge were
erroneous.

*Codman* and *H. Belcher*, for the defendants, cited the *Massachu-
setts* act incorporating the defendants, *Feb.* 27, 1813, and said, that
this authorized only the building of a bridge from shore to shore,
and denied, that the corporation itself, much less individual corpo-
rators, could make any road leading to it, or adopt any road made
by others, which could make the corporation liable for any accident
happening where this did, either by any statute, or at common law.
They enforced the several positions taken at the trial, and cited 4
*Pick.* 341; *Mass. Stat.* of 1804, *ch.* 125; 9 *Mass. R.* 247; *Stat.*
of this State, of 1821, *ch.* 118, *sec.* 17; 1 *Fairf.* 447; 7 *Mass.
R.* 393; 8 *Greenl.* 365; 2 *Greenl.* 55; 4 *Greenl.* 270; 5 *Greenl.*
368; 3 *Pick.* 408; 2 *Pick.* 51; 7 *Pick.* 225; 6 *Pick.* 59; 14
*Mass. R.* 282; 4 *Greenl.* 44; 7 *Greenl.* 118; 4 *Greenl.* 508; 2

*Fairf.* 227 ; 1 *Pick.* 297 ; 2 *Johns. R.* 109 ; 14 *Mass. R.* 234 ; 5 *Burrow*, 2594 ; 2 *N. H. Rep.* 513 ; 2 *Fairf.* 278 ; 7 *Greenl.* 273 ; 7 *Greenl.* 63 ; 1 *Chitty on Pl.* 349 ; *Rev. Stat. ch.* 87 ; 1 *Pick.* 109 ; 8 *Mass. R.* 292 ; 12 *Wheat.* 40 ; 2 *Kent's Com.* 292 ; 3 *Mass. R.* 276.

*Mitchell*, for the plaintiff, said, that a bridge is defined to be " a building of stone or wood," or earth " erected across a river for the common ease and benefit of travellers." *Jac. L. Dic. tit. Bridge.* And it is contended, that the entire distance from where the right of public travel ceases at one end of the bridge, and begins at the other, comes within the term bridge, as erected by the corporation, and that whatever distance they appropriate to corporate purposes they are bound to keep in repair. And that if the defendants legally appropriated this way as an avenue to the bridge, it is a part of it, and they are as much bound to keep it in repair, as any other part of the bridge. And if they have even illegally appropriated this way as part of their bridge, and an individual suffer from such appropriation, they are bound to pay his damage. *Goodenow v. Inhabitants of Cincinnati,* 4 *Hammond,* 513. If they opened their bridge, received tolls, and are acting as a corporation in thus doing, and the avenues provided to the bridge are not safe, it is a neglect of corporate duty, and the individual suffering from it has his remedy against them. *Riddle v. L. & C. on Merrimack River,* 7 *Mass. R.* 187 ; *Mower v. Leicester,* 9 *Mass. R.* 247. And if the proprietors of the bridge are only tenants at will of the land over which the road is kept by them they are bound to repair it, and are liable for the consequences of their neglect. *Ld. Raymond,* 858.

After a continuance, for advisement, the opinion of the Court was drawn up by

Weston C. J.—The statute, by which the defendants were created a corporation, and authorized to build the bridge in question, and from which also they derive their right to claim and receive toll, imposes upon them the duty to keep the same " in good, safe, and passable repair." If the plaintiff has sustained an injury, from the failure of the defendants to fulfil this duty, we doubt not he may sustain an action therefor. This results from the principles of natural justice, which are to be applied as well to corporations

as to individuals.   The case of *Riddle* v. *Proprietors of locks and canals on Merrimack river*, 7 *Mass. R.* 169, is an authority in point, to which we refer.

The declaration sets forth the liability of the defendants, to keep the bridge in safe and convenient repair, for the accommodation of all the citizens, " paying a reasonable and stated toll therefor," and avers " the readiness of the plaintiff to pay said toll, when he arrived at the toll-house."   But we are not called upon, in the case before us, to decide upon the sufficiency of the declaration, which is not drawn in question, either upon demurrer, or upon a motion in arrest of judgment.   Nor is the title of the defendants to the land, upon or over which their bridge passes, properly in controversy.   Whatever it may be, or whether it commenced or is continued by right or by wrong, the measure of their liability is the same.

We doubt not it was competent for the plaintiff to prove, what a deceased witness had testified to at a former trial of this cause.   It is liable to no legal objection; and *is well sustained by authority*, and the practice of our courts.

The plaintiff was permitted to prove, that members of the corporation had worked upon that part of the passage way, where the injury happened.   It is quite immaterial by whom this was done, or whether there was or was not a proper deduction of authority from the corporation.   If it was adopted by them, and it does in fact form a part of the bridge, it was the duty of the defendants to keep it in repair.   That it was adopted as a part of the bridge, is in no degree deducible from the fact, that it was worked upon by some of the members of the corporation.   That evidence, then, we regard as immaterial, and therefore its admission does not, in our judgment, constitute a sufficient objection to the verdict.

The members of the corporation, offered as witnesses for the defendants, had a direct interest in the event of the suit.   This does not belong to the class of corporations, the members of which are made competent witnesses by statute.

The main question is, whether from the facts, the place of the injury constituted a part of the bridge.   And we are of opinion that it did.   It was on or near ground, which had been wharfed up, where that end of the bridge landed.   It was properly the entrance

to the bridge, from the public travelled way; and the only way of ingress and egress, of which travellers, passing the bridge, could avail themselves. If an access like this might be left in a danger-ous state, without liability on the part of the defendants, the bridge, for the passing of which they receive a compensation, would become a trap, instead of an accommodation, for travellers. It is too nar-row a construction to hold, that a bridge over a river ceases at the point where it rests upon the land, and that those, who are charged with the duty of making it passable, are not bound to make it ac-cessible from the bank on either side, or having done so, that they are not bound to keep it safe and convenient.

The liability of the defendants being established, the only re-maining question is, as to the measure of damages. The plaintiff is entitled to a fair indemnity for his loss. He has lost the value of his horse, and also what he has expended in endeavoring to cure him. The jury having allowed this part of his claim, it must be understood, that it was an expense prudently incurred, in the reas-onable expectation, that it would prove beneficial. It was incurred, not to aggravate, but to lessen, the amount for which the defendants might be held liable. Had it proved successful, they would have had the benefit of it. As it turned out otherwise, it is but just, in our judgment, that they should sustain the loss.

*Judgment on the verdict.*