1997 ME 10

## SEVEN TREE MANOR, INC.

v.

## Keith KALLBERG.

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 5, 1996.

Decided Jan. 23, 1997.

Stephen P. Beale, Skelton, Taintor & Abbott, Auburn, for Seven Tree Manor, Inc.

Bruce Mallonee, Rudman & Winchell, Bangor, for Donn Bowden, Inc.

Patrick S. Bedard, Eliot, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] Keith Kallberg appeals from a judgment entered in the Superior Court (Knox County, *Kravchuk, J.*) on a jury verdict awarding damages to Seven Tree Manor, Inc. (Seven Tree) on its complaint against Kallberg. Kallberg contends the trial court erred in denying his renewed motion, pursuant to M.R.Civ.P. 50(b), for a judgment as a matter of law on the ground that it had not been established by expert testimony that he had breached the standard of care required of a professional engineer. We affirm the judgment.

[¶ 2] The record reflects the following undisputed facts: In October 1989, Barwick Property Services, Inc. (Barwick) entered into a contract with Seven Tree for the design and replacement of a septic system at the Seven Tree Nursing Home located in Union. Chapter 214 of the Subsurface Wastewater Disposal Rules, Department of Human Services Division of Health, required that the septic system be designed by an engineer and that "[t]he property owner shall retain the designing engineer to supervise the construction of the system." A second contract was entered into between the parties in June 1990, providing that Kallberg, a licensed professional engineer, and the designing engineer of the system, would supervise its construction. The construction of the system by Donn Bowden, Inc., was started in early April 1990. Although Joe Noel, a licensed soil scientist employed by Barwick, visited the construction site four times during the month of June 1990, for approximately one hour each visit, and took photographs that he shared with Kallberg, on none of his visits did he observe any equipment working at the site. On his last visit on June 26, 1990, two of the four leach fields had been covered and two were still exposed. Kallberg did not visit the site during the construction of the system. Almost immediately following the completion of the construction at the end of August 1990, problems developed in the system. It was determined that the biodiffusers, the part of the system placed throughout the four leach fields and covered with top soil, had been cracked and damaged in the course of installation. This resulted in a constriction or blockage of the flow of wastewater through the system and caused the system to fail. The septic system had to be replaced.

[¶ 3] By its complaint against Kallberg, Seven Tree sought damages alleged to have been caused by Kallberg's negligent supervision of the construction of the system. At the trial of this case[1] the court denied Kallberg's motion for a judgment as a matter of law. The jury found that Kallberg had negligently supervised the construction of the septic system and awarded $10,000 in damages

to Seven Tree. Following the entry of the judgment in favor of Seven Tree, the trial court, after a hearing, denied Kallberg's renewed motion for a judgment as a matter of law, and Kallberg appeals.

[¶ 4] Kallberg contends the trial court erred by denying his motion for a judgment as a matter of law. He argues, as he did before the trial court, that the insufficiency of the evidence adduced at the trial by Seven Tree, including the testimony of its witness Albert Hodsdon, a licensed professional engineer, to establish the standard of care required of Kallberg in supervising the construction of the septic system and his breach of that standard, entitled him to a judgment in his favor as a matter of law. We disagree.

[¶ 5] In reviewing the trial court's denial of Kallberg's motion for a judgment as a matter of law, we view the evidence in the light most favorable to Seven Tree, in whose favor the jury verdict was returned, and the judgment must stand unless manifestly wrong. *Libby v. Concord General Mut. Ins.,* 452 A.2d 979, 981 (Me.1982); *George v. Guerette,* 306 A.2d 138, 145 (Me.1973).

[¶ 6] A number of decades ago, we established the principle that when the negligence and harmful results are not sufficiently obvious as to be within common knowledge, expert evidence is essential to sustain an action for negligence against a physician or surgeon. *Cyr v. Giesen,* 150 Me. 248, 252, 108 A.2d 316, 318 (1954). We have affirmed that principle as it relates to a claim of negligence against a lawyer. *See Jim Mitchell v. Jackson,* 627 A.2d 1014, 1017 (Me.1993) (expert evidence not required to establish attorney's breach of duty "in cases where the breach or lack thereof is so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen") (citation omitted). We have not previously addressed when expert testimony is necessary to prevail in an action for negligence against a professional engineer. We are urged by both parties to address this issue. The parties contend that

---

1. This case was consolidated with two other cases. No appeals have been taken from the

other judgments entered following the trial of the consolidated cases.

the rationale for the principle concerning expert testimony to establish negligence of a medical or legal professional is also applicable to the profession of engineering. They point to 32 M.R.S.A. § 1251 (1988 & Supp. 1996) that provides, in pertinent part:

3. **Practice of professional engineering.** The term "practice of professional engineering" shall be held to mean any professional service, such as consultation, investigation, evaluation, planning, design or responsible supervision of construction in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects, wherein the public welfare or the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of engineering principles and data.

4. **Professional engineer.** The term "professional engineer" means a person who, by reason of a knowledge of mathematics, the physical sciences and the principles of engineering, acquired by professional education and practical experience, is qualified to engage in engineering practice as defined.

They also point to 32 M.R.S.A. §§ 1301–1361 (1988 & Supp.1996), providing for the establishment of the State Board of Registration for Professional Engineers and defining its powers and duties, and section 1256, providing, *inter alia,* that it is a Class E offense for a person to practice or attempt to practice professional engineering without being properly registered by the Board.

[¶ 7] We find the argument of the parties persuasive and, accordingly, conclude that the principle articulated in *Cyr* and *Mitchell* is also applicable to an action for negligence against a professional engineer.

 [¶ 8] In the instant case the jury heard evidence that Kallberg was the designing engineer for the septic system to be installed at the nursing home. Seven Tree retained Kallberg to supervise the construction of the system. Kallberg never visited the construction site. Rather, he delegated this duty to Noel, who was not an engineer, had no training for supervising the construction of the system and testified it was not his duty to do so. He was not present when the leach fields were being covered. It was undisputed that the system failed because of damage to the biodiffusers in the course of the construction of the system.

[¶ 9] In viewing all the evidence in this case in favor of Seven Tree, as we must, we conclude that the trial court properly determined that the alleged negligence of Kallberg and the harmful results are sufficiently obvious to be within common knowledge and properly denied Kallberg's motion for a judgment in his favor as a matter of law.

The entry is:

Judgment affirmed.

