STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss.                                 CIVIL ACTION
                                                  Docket No. CV-13-168

                        RECEIVED & FILED

LINDSY HAYES,                    APR 0 7 2015
        Plaintiff
                                   ANDROSCOGGIN
                                   SUPERIOR COURT      ORDER ON MOTION FOR
                                                       SUMMARY JUDGMENT
v.


LISBON ROAD ANIMAL HOSPITAL,
        Defendant


        Before the court is Defendant Lisbon Road Animal Hospital's ("Lisbon Road") Motion
for Summary Judgment. Plaintiff Lindsy Hayes filed a seven-count Complaint against Lisbon
Road following the death of her collie, Murphy. The court previously granted Lisbon Road's
Motion for Judgment on the Pleadings as to Count IV, for negligent infliction of emotional
distress, and Count VII, for loss of companionship and intrinsic value, and those counts have
been dismissed. Lisbon Road's Motion for Summary Judgment concerns the remaining counts
of the Complaint. The Complaint contains the following remaining counts: Count I is for
professional negligence; Count II is for breach of fiduciary duty; Count III is for recoupment;
Count V is for breach of contract; and Count VI is for vicarious liability. Ms. Hayes has opposed
Lisbon Road's Motion for Summary Judgment. The court has reviewed the parties' filings, and
has found the following.

        I.      Factual and procedural background

        The following facts are gathered from Lisbon Road's Statement of Material Facts
(S.M.F.), Ms. Hayes' Responses to the S.M.F. (O.S.M.F.), Ms. Hayes' Additional Statement of
Material Facts (A.S.M.F.), and Lisbon Road's Reply Statement (R.S.M.F.).

        On July 20, 2012, Ms. Hayes brought her eight-year-old dog, Murphy, to Lisbon Road so
that his skin condition could be evaluated and treated. (S.M.F. ¶ 1; O.S.M.F. ¶ 1; A.S.M.F. ¶ 1;
R.S.M.F. ¶ 1.) Murphy was diagnosed with Seborrhea and he was prescribed a shampoo to
address itching. (A.S.M.F. ¶ 3; R.S.M.F. ¶ 3.) When Ms. Hayes and Murphy visited Lisbon Road
they would see either Veterinarian Robert Clark, Jr. or Veterinarian Tyler Cote. (S.M.F. ¶ 2;
O.S.M.F. ¶2; A.S.M.F. ¶ 2; R.S.M.F. ¶ 2.)

        Between July 20, 2012 and March 7, 2013, Ms. Hayes both consulted by telephone and
visited Lisbon Road a number of times for treatment of Murphy's skin condition. (S.M.F. ¶ 2;
O.S.M.F. ¶ 2.) Doctors Clark and Cote performed a variety of diagnostic tests and recommended

a number of remedies for Murphy's skin ailments. (*Id.*) On November 16, 2012, Murphy visited Lisbon Road again because his skin condition had failed to clear up and Prednisone was prescribed. (A.S.M.F. ¶ 4; R.S.M.F. ¶ 4.) Ms Hayes was very concerned that Murphy's condition was not improving. (A.S.M.F. ¶ 5; R.S.M.F. ¶ 5.) Murphy returned to Lisbon Road again on January 18, 2013. (A.S.M.F. ¶ 7; R.S.M.F. ¶ 7.)

On March 5, 2013, Ms. Hayes and Dr. Clark discussed a skin scraping test. (A.S.M.F. ¶ 9; R.S.M.F. ¶ 9.) Dr. Clark indicated that a skin scraping test was unnecessary. (A.S.M.F. ¶ 9; R.S.M.F. ¶ 9.) He explained that he would treat for mites, since if mites are suspected mites should be treated regardless of the outcome of the test. (R.S.M.F. ¶ 9.) Dr. Clark prescribed the medication Revolution for Murphy. (A.S.M.F. ¶ 10.)

Revolution provides that it is not to be given to underweight dogs. (A.S.M.F. ¶ 10.) While Murphy had lost 34 pounds, Murphy had originally been overweight prior to his weight loss and after his weight loss Murphy weighed 111 pounds. (A.S.M.F. ¶ 10; R.S.M.F. 10.) Ms. Hayes testified that normal weight for an adult male collie can range from 60 to over 100 pounds.[1] (R.S.M.F. ¶ 10.)

Ms. Hayes eventually took Murphy to Central Maine Veterinary Hospital on March 11, 2013, at which point he was in dire shape and deteriorating. (S.M.F. ¶¶ 3-4; O.S.M.F. ¶¶ 3-4.) Dr. Claire Morissette examined and performed diagnostic tests on Murphy. (S.M.F. ¶ 3; O.S.M.F. ¶ 3.) Dr. Morissette performed a skin scrape and found that Murphy had scabies. (A.S.M.F. ¶ 13; R.S.M.F. ¶ 13.) Dr. Morissette also suggested that Murphy had cancer. (S.M.F. ¶ 4; O.S.M.F. ¶ 4.) Based on his poor health and the likelihood that Murphy had untreatable cancer, Ms. Hayes had Murphy euthanized on March 21, 2013. (S.M.F. ¶ 5; O.S.M.F. ¶ 5.)

Ms. Hayes' counsel sought and the court granted five separate enlargements of Ms. Hayes' deadline to designate expert witnesses, which extended Ms. Hayes' deadline by 88 days. (S.M.F. ¶ 7; O.S.M.F. ¶ 7.)

At the time of the final deadline for designating expert witnesses, Ms. Hayes' counsel designated Dr. Clark of Lisbon Road and Dr. Morissette of Central Maine Veterinary Hospital. (S.M.F. ¶ 8; O.S.M.F. ¶ 8.) With respect to Dr. Clark, the designation did not provide any opinions that Ms. Hayes claims Dr. Clark holds that would substantiate her claim against him,

---

[1] The court notes that Ms. Hayes is not an expert witness and testimony regarding whether Revolution should or should not be prescribed for underweight dogs or the normal weight range of male collies is information that should be provided by an expert witness, rather than a lay person. Likewise, if Ms. Hayes relies upon information found on Revolution packaging, then Ms. Hayes should have supplied the packaging rather than hearsay testimony. Lisbon Road, however, did not object to Ms. Hayes' testimony that the Revolution package states it should not be given to underweight dogs, nor did either party object to Ms. Hayes' statements regarding the normal weight of an adult male collie. In fact, Lisbon Road's Reply Statement relies on Ms. Hayes' testimony regarding collie weight. Accordingly, the court has allowed these statements to be considered as a part of the factual background.

2

instead the designation stated that Dr. Clark's opinions would be elicited through deposition and that she reserved the right to adopt them. (S.M.F. ¶ 9; O.S.M.F. ¶ 9.) Ms. Hayes never noticed or attempted to take Dr. Clark's deposition prior to the discovery deadline of September 14, 2014, and her motion to enlarge the discovery deadline was denied. (S.M.F. ¶ 10; O.S.M.F. ¶ 10.) Lisbon Road's Answer to the Complaint denies that Dr. Clark breached any duty to Ms. Hayes or that his actions caused Murphy's death. (S.M.F. ¶ 11; O.S.M.F. ¶ 11.)

Ms. Hayes originally asserted that Dr. Morissette would provide expert testimony concerning breaches of the standard of care, however, Dr. Morissette was designated without her knowledge and consent, never agreed to act as an expert witness, and would not consent to act as an expert witness. (S.M.F. ¶¶ 12-13; O.S.M.F. ¶¶ 12-13.) On September 2, 2014, following Dr. Morissette's objection to her designation, Ms. Hayes' counsel supplied an amended expert witness list, which no longer listed Dr. Morissette and only listed Dr. Clark. (S.M.F. ¶ 14; O.S.M.F. ¶ 14.) Ms. Hayes has no education in veterinary science. (S.M.F. ¶ 15.)

II.     Standard of review

"Summary judgment is appropriate when the record reveals no issues of material fact in dispute. A fact is material if it has the potential to affect the outcome of the case." *Lepage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629 (citations omitted).

The Law Court has held that "[s]ummary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18; *see also Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757. If "a defendant moves for summary judgment, the plaintiff 'must establish a *prima facie* case for each element of her cause of action' that is properly challenged in the defendant's motion." *Curtis*, 2001 ME 158, ¶ 8, 784 A.2d 18 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842); *see also Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.

When considering a Motion for Summary Judgment, the court must admit uncontroverted facts from the statement of material facts that are properly supported. M.R. Civ. P. 56(h)(4). The court cannot consider parts of the record that are not properly referenced in a statement of material facts. *See* M.R. Civ.P. 56(h)(4) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."); *see also HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 17, 28 A.3d 1158.

III.    Discussion

**a.  Professional negligence, breach of contract, recoupment and vicarious liability**

As an initial matter, Ms. Hayes concedes that her recoupment, breach of contract, and vicarious liability claims should be "treated consistently" with her professional negligence claim.

3

Ms. Hayes has alleged that Lisbon Road breached the standard of care in its treatment of Murphy and that Lisbon Road's negligence proximately caused Murphy's death. Ms. Hayes, however, has not properly designated experts to support her case. Dr. Clark of Lisbon Road is listed as her sole expert witness. Lisbon Road contends that Ms. Hayes cannot prevail on her action for professional negligence without expert testimony.

"[O]rdinarily a plaintiff can discharge his burden of proof for a claim of negligent medical care only by expert medical testimony establishing the appropriate standard of medical care, that the defendant departed from the standard, and that the negligent conduct proximately caused the plaintiff's injury." *Forbes v. Osteopathic Hosp. of Maine, Inc.*, 552 A.2d 16, 17 (Me. 1988). "The exception to the rule is that under some circumstances where the negligence and harmful results are sufficiently obvious as to lie within common knowledge, a verdict may be supported without expert testimony." *Cyr v. Giesen*, 150 Me. 248, 251-52, 108 A.2d 316, 318 (1954). This principle has been extended to negligence actions involving attorneys and professional engineers. *Seven Tree Manor, Inc. v. Kallberg*, 1997 ME 10, ¶¶ 6, 7, 688 A.2d 916.

Maine Rule of Evidence 702 allows for the use of expert testimony "If scientific, technical, or other specialized knowledge will assist the trier or fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." M.R. Evid. 702.

Other jurisdictions have required expert testimony in veterinary malpractice actions. *E.g.*, *Zimmerman v. Robertson*, 854 P.2d 338, 340 (Mont. 1993) ("expert testimony is necessary to establish the applicable standard of care in an action against a veterinarian which arises from the veterinarian's professional capacity. Matters concerning the standard of care owed by a veterinarian during and after surgery are outside the common experience and knowledge of lay jurors . . . ."); *Juliano v S.I. Vet Care*, 950 N.Y.S.2d 492 (N.Y. App. Term. 2012) (while stating that expert testimony is unnecessary in cases where the acts themselves demonstrate malpractice, the court noted that in the veterinary malpractice case before it "plaintiff's failure to offer any expert testimony to prove that defendant's treatment of her dog deviated from accepted veterinary standards of practice was fatal to her claim."). The Texas Court of Appeals held that "veterinarian negligence cases are to be analyzed under the same standard applied to physicians and surgeons in medical malpractice cases. . . . . [E]xpert testimony is required to prove negligence unless the form or mode of treatment is a matter of common knowledge, or the matter is within the experience of a layperson." *McGee v. Smith*, 107 S.W.3d 725, 727 (Tex. App. 2003)(citation omitted).

Interpreting Texas law in a veterinary malpractice action, the United States District Court for the Southern District of Texas found that "Texas courts have applied the same

4

standard of care to medical negligence cases as to veterinary negligence cases." *Simpson v. Baronne Veterinary Clinic, Inc.*, 803 F. Supp. 2d 602, 608 (S.D. Tex. 2011). The court stated that "To establish a negligent act or omission, expert testimony is required from a member of the veterinary medical profession with education, skill and experience similar to those of the defendant." *Simpson*, 803 F. Supp. 2d 602, 607 (S.D. Tex. 2011).

In California, the Court of Appeal applied the requirements of medical malpractice actions to veterinary malpractice actions, noting:

> In medical malpractice cases, the established rule is that a doctor must exercise the degree of skill or care usual in the profession, and will not be held liable for untoward consequences in the absence of a want of such reasonable care and skill. We find that this standard applies to veterinary malpractice cases, as well. Veterinarians, like medical doctors, are licensed health care providers, and veterinary malpractice cases are treated like medical malpractice cases for purposes of statute of limitations. Further, out-of-state courts that have considered the question have held that standards governing medical malpractice actions control in veterinary malpractice cases.

*Williamson v. Prida*, 89 Cal. Rptr. 2d 868, 872-73 (Cal. Ct. App. 1999), *as modified* (Nov. 18, 1999)(citations omitted); *see also Quigley v. McClellan*, 154 Cal. Rptr. 3d 719, 724 (Cal. Ct. App. 2013) ("To establish a veterinarian malpractice claim, a plaintiff is required to present expert testimony establishing the appropriate standard of care in the relevant community.")

Lisbon Road maintains that expert testimony is required to demonstrate that Lisbon Road breached a duty of care in its treatment of Murphy and that the breach was the proximate cause of Murphy's death. In this case, to determine the issues of breach and causation requires knowledge of veterinary medicine beyond lay knowledge, and an expert witness would be necessary to provide this knowledge.

Ms. Hayes has designated Dr. Clark as her sole expert witness. What testimony Ms. Hayes hopes to elicit from Dr. Clark is unclear. Ms. Hayes argues that expert testimony is not required in this action. She has cited *Seven Tree Manor*, a professional negligence claim involving a supervising engineer on a septic system project that failed where the supervising engineer failed to visit the job-site for the entirety of the project, to support her contention that expert testimony is unnecessary to prove her case. 1997 ME 10, ¶ 2, 688 A.2d 916. In *Seven Tree Manor*, the plaintiff presented testimony from a licensed professional engineer, but the defendant argued that it was insufficient to establish the standard of care and breach thereof. *Id.* ¶ 5. The court ruled that the defendant's negligence and the resulting harm were sufficiently obvious to fall within the realm of common knowledge and that the court acted properly when it denied the defendant's motion for judgment as a matter of law. *Id.* ¶ 9. This case is distinguishable from an action where a supervising engineer never supervised. This case involves complex matters of

5

veterinary treatment beyond the ken of the average juror. This case is also distinguishable from *Forbes v. Osteopathic Hosp. of Maine, Inc.*, where the Law Court held that a genuine issue of material fact existed as to whether expert testimony was necessary to sustain a medical malpractice action where the defendant "did not support the conclusory assertion set forth in its motion for summary judgment with any affidavits, depositions, admissions on file, or answers to interrogatories to demonstrate that proof of the defendant's alleged negligent medical care requires expert medical testimony." 552 A.2d 16, 17 (Me. 1988).

Ms. Hayes' professional negligence claim cannot survive summary judgment. Ms. Hayes has not made a prima facie case that Lisbon Road breached the standard of care and that that breach caused Murphy's severe deterioration in health that led her to euthanize Murphy. Ms. Hayes relies upon her feelings about tests that she believes Lisbon Road should have run to argue her negligence case. Ms. Hayes' feelings are not relevant in this context. Neither is the fact that Dr. Morissette performed a skin scrape and determined that Murphy had scabies relevant. Dr. Clark prescribed medication to treat Murphy for mites without the skin scrape. Ms. Hayes has not demonstrated how failing to perform the skin scrape was a breach of the standard of care.

Additionally, Ms. Hayes has provided no evidence that Lisbon Road breached a contract with her. The breach of contract claim also relies upon the premise that Lisbon Road was required to provide a certain level of care, failed to provide that level of care, and therefore caused damages. In order to show that Lisbon Road failed to provide adequate care, Ms. Hayes requires expert testimony in support of her claim. Ms. Hayes breach of contract claim cannot survive summary judgment.

Furthermore, Ms. Hayes' claim to recoup the fees that she paid to Lisbon Road also fails, since she has not shown that Lisbon Road failed to provide adequate services and that she is equitably entitled to reimbursement of the fees that she paid to Lisbon Road.

### b. Breach of fiduciary duty

Ms. Hayes has asserted that a veterinarian owes a fiduciary duty to a dog's owner, and that Lisbon Road breached that fiduciary duty. Lisbon Road argues that summary judgment should also be granted on the breach of fiduciary duty claim, as it simply reasserts the professional negligence claim. Like the professional negligence claim, Lisbon Road asserts that the breach of fiduciary duty claim requires expert testimony.

"The elements of a fiduciary relationship are '(1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue.'" *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 7, 54 A.3d 710 (quoting *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 19, 738 A.2d 839). A

6

fiduciary is held to a "very high duty" and his actions are analyzed to determine whether they constituted "entire fairness". *Depositors Trust Co. v. Blanchard*, 377 A.2d 101, 103 (Me. 1977).

In *Bryan R.*, the Law Court explained that it is frequently difficult to explain what is necessary to prove a fiduciary relationship in different contexts and noted that "The term 'fiduciary' is 'one of the most ill-defined, if not altogether misleading terms in our law.'" 1999 ME 144, ¶ 18 n. 9, 738 A.2d 839 (quoting *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 10 F.Supp.2d 138, 149 (D.Conn.1998)). The Law Court stated that fiduciary relationships "ha[ve] been found to exist in several categories of relationship, including business partners, families engaged in financial transactions, and corporate relationships." *Id.* ¶ 19.

When reviewing a trial court's decision in a case involving the relationship between a veterinarian and an elderly client, the Appeals Court of Massachusetts noted "We see no reason to quibble with the trial judge's well-reasoned conclusion that [t]here is no relevant case law in Massachusetts, or elsewhere for that matter, to suggest that a fiduciary or confidential obligation flows from interactions between a client and her veterinarian...."*Goodman v. Atwood*, 940 N.E.2d 514, 518 n. 9 (Mass. App. Ct. 2011) (quotation marks omitted).

In this action, it is unnecessary to determine whether a veterinarian owes a fiduciary duty to a dog's owner, because even if it were possible to find a fiduciary relationship, Ms. Hayes has not shown that she can demonstrate a violation of fiduciary duty without an expert witness. Ms. Hayes' breach of fiduciary duty claim ultimately fails for the same reason that her professional negligence and breach of contract claims fail.

Accordingly, the court **ORDERS** that Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Complaint is DISMISSED with prejudice.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 4/7/15

MaryGay Kennedy
Justice, Superior Court

7

LINDSY HAYES - PLAINTIFF

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No   AUBSC-CV-2013-00168

Attorney for: LINDSY HAYES
MICHAEL BOSSE  - RETAINED
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

vs
LISBON ROAD ANIMAL HOSPITAL - DEFENDANT

Attorney for: LISBON ROAD ANIMAL HOSPITAL
BARRI BLOOM  - RETAINED 01/14/2014
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS STREET
PO BOX 9545
PORTLAND ME 04112-9545


Filing Document: COMPLAINT                    Minor Case Type: OTHER NEGLIGENCE
Filing Date: 12/06/2013

## Docket Events:

12/06/2013 FILING DOCUMENT - COMPLAINT FILED ON 12/06/2013

12/06/2013 Party(s):  LINDSY HAYES
           ATTORNEY - RETAINED ENTERED ON 12/06/2013
           Plaintiff's Attorney: MICHAEL BOSSE

01/14/2014 Party(s):  LISBON ROAD ANIMAL HOSPITAL
           RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 01/14/2014

01/14/2014 Party(s):  LISBON ROAD ANIMAL HOSPITAL
           ATTORNEY - RETAINED ENTERED ON 01/14/2014
           Defendant's Attorney: BARRI BLOOM

01/14/2014 ORDER - SCHEDULING ORDER ENTERED ON 01/14/2014
           MARYGAY  KENNEDY , JUDGE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.   COPIES TO
           PARTIES/COUNSEL

01/14/2014 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 09/14/2014

01/14/2014 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 01/14/2014
           MARYGAY  KENNEDY , JUDGE

02/28/2014 Party(s):  LINDSY HAYES
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 02/28/2014
           TO RESPOND TO INTERROGATORIES BY 14 DAYS, WITH PROPOSED ORDER AND REQUEST FOR HEARING

03/03/2014 Party(s):  LINDSY HAYES,LISBON ROAD ANIMAL HOSPITAL
           LETTER - FROM PARTY FILED ON 03/03/2014
           NO OBJECTION TO MOTION TO EXTEND TIME

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-168
AND-MGK-DI3-13-14

LINDSY HAYES,

    Plaintiff

v.

ORDER

RECEIVED & FILED

DEC 1 9 2014

ANDROSCOGGIN
SUPERIOR COURT

LISBON ROAD ANIMAL HOSPITAL,

    Defendant

Lindsy Hayes has filed a seven-count Complaint against Lisbon Road Animal Hospital ("Lisbon Road") following the protracted illness and death of her collie, Murphy. She attributes Murphy's death to Lisbon Road's negligence. Arguing that the following counts fail to state a claim upon which relief can be granted, Lisbon Road has moved pursuant to Maine Rules of Civil Procedure 12(b)(6) and 12(c) to dismiss Count IV for negligent infliction of emotional distress and Count VII for loss of companionship and intrinsic value. Ms. Hayes has opposed Lisbon Road's Motion for Judgment on the Pleadings. The court has reviewed the parties' filings and held a hearing on the Motion on August 7, 2014.

I.    Factual Background

The following facts are gathered from the Complaint unless otherwise noted. In 2012, Ms. Hayes was the owner of a collie named Murphy. On July 20, 2012, Ms. Hayes took Murphy to Lisbon Road Animal Hospital in Lewiston to be evaluated for a skin condition. Murphy was prescribed a shampoo to treat seborrhea. Following that visit, Ms. Hayes continued to take Murphy to Lisbon Road, because Murphy's skin condition failed to improve and Murphy continuously lost weight. On November 16, 2012, Murphy was prescribed an antihistamine, Carprofen, and Ms. Hayes was advised to continue to use the shampoo and fish oil. Ms. Hayes brought Murphy to Lisbon Road on January 18, 2013, because Murphy was excessively scratching and chewing his hair out. While no physical examination of Murphy was performed, Murphy was prescribed Vetalog, Prednisone, and skin wipes.

When Ms. Hayes contacted Lisbon Road on January 31, 2013 and asked to recommence the Carprofen prescription, she was instructed to wait 2-3 days. Later, on February 11, 2013, Ms. Hayes called Lisbon Road in order to discuss medications. She reported that Murphy was constantly scratching, losing hair, and banging the floors at night. Lisbon Road prescribed an anti-itch medication and an increase in Murphy's Benadryl and fatty acids. When Ms. Hayes called again on February 15, Lisbon Road prescribed a 10-day supply of steroids and Carprofen.

The next day, Ms. Hayes informed Lisbon Road that Murphy was drinking and urinating excessively. Lisbon Road tested a urine sample, which showed an increase in protein and bacteria, but Lisbon Road informed Ms. Hayes that the test results were within the normal limits.

A CBC test was performed on February 20, 2013. It revealed an increase in Murphy's liver enzymes and white blood cell count. Lisbon Road decided that Murphy's medications caused the elevated results. At the time, Lisbon Road observed that Murphy appeared "emaciated", but Lisbon Road failed to perform a physical exam. Ms. Hayes called Lisbon Road on March 5, 2013, requesting a skin scrape. She was informed that Dr. Clark would return her call in the morning, but Lisbon Road never returned her call.

On March 7, 2013, Ms. Hayes brought Murphy into Lisbon Road and requested a skin scrape. Lisbon Road was unwilling to perform the skin scrape, and instead provided Revolution for Murphy and her other dogs. The Revolution box warns that it is not to be used on "sick, debilitated or underweight animals." (Pl.'s Compl. ¶ 19.) Between February 11, 2012 and February 20, 2013, Murphy had gone from 103 lbs. to 58.2 lbs.

Eventually, on March 11, 2013, Ms. Hayes brought Murphy to Central Maine Veterinary Hospital ("CMVH"), where they performed a skin scrape and determined that Murphy had mites. As a result, CMVH prescribed a treatment for Ms. Hayes and all of her dogs and cats. A CBC was administered, and it showed that Murphy's white blood cells and liver enzymes were high. The physical exam showed that Murphy had substantial muscle loss and a painful and tense abdomen.

Murphy's health continued to quickly and notably decline, and on March 21, 2013, Murphy was euthanized at CMVH. Following Murphy's death, Lisbon Road sent a reminder notice to Ms. Hayes for shots for her pets, including Murphy.

2

II.    Standard

A motion for judgment on the pleadings pursuant to M.R. Civ. P. 12(c) tests the legal sufficiency of the Complaint. *See Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988). A "motion for judgment on the pleadings is nothing more than a motion under M.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted." *Id.*

When considering a motion to dismiss under Rule 12(b)(6) the Law Court has held that:

> '[w]e view the material allegation of the complaint as admitted and examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. A dismissal is appropriate only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim. The legal sufficiency of a complaint is a question of law.'

*Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 4, 796 A.2d 674 (quoting *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673).

Claims for relief must "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief which the pleader seeks." M.R. Civ. P. 8(a). The rules require that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." M.R. Civ. P. 8(e)(1). The Law Court explained that "[t]he conception underlying Rule 8 M.R.C.P. is that the function of the complaint is to give fair notice of the claim, and this may be '. . . sufficiently performed by a rather generalized statement.'" *Casco Bank & Trust Co. v. Rush*, 348 A.2d 239, 241 (Me. 1975) (quoting 1 F.McK.& W., Me.Civ.Pr.2d, pp. 192, 193).

The Supreme Court has held, however, that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above

the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

III.     Discussion

There is limited case law in Maine that pertains to the status of household pets; and, what there is dates back to the 1800's and early 1900's . *See Chapman v. Decrow*, 93 Me. 378, 45 A. 295, 298 (1899) ("By the common law, a dog is property, for an injury to which an action will lie.") While the cases provide precedent for the court to find and conclude that a dog is property, many pet owners, including Ms. Hayes, do not share that view. According to the ASPCA, Ms. Hayes is just one of an estimated 47% of all households in the United States that collectively own approximately 83 million dogs. It is certainly understandable that reducing the status of a beloved pet to "property," does not and would not sit well with many of those pet owners.

That said, the question presented in this instance is whether it's possible in Maine to sustain claims for negligent infliction of emotional distress and loss of companionship related to the negligent care or injury of a dog. Lisbon Road has argued that it is not possible, as emotional distress damages are not available for the negligent loss of a dog, since a dog is considered property. Lisbon Road contends that since dogs are considered property, a plaintiff can only collect compensatory damages limited to the fair market value of that property.

To calculate damages to property, the court usually considers: "(1) the difference in value of the property before and after the actionable injury, or 2) the cost of repairing or restoring the property to its condition before the injury." Horton & McGehee, *Maine Civil Remedies* § 4-3(c)(7) at 67-68 (4th ed. 2004). *See Watson v. Proprietors of Lisbon Bridge*, (where a horse was injured because of a defect in the way adjacent to the bridge, the Law Court found that the traveler was entitled to compensation for money spent attempting to cure the horse as well as the value of the horse. 14 Me. 201, 204 (1837) "The plaintiff is entitled to a fair indemnity for his loss. He has lost the value of his horse, and also what he has expended in endeavoring to cure him." *Id.*

In this case, Lisbon Road argues that since Murphy has died, the only factor to consider is Murphy's value when the allegedly negligent acts took place.

4

Lisbon Road has cited to out-of-state cases to show that the majority of jurisdictions do not allow emotional distress damages when an animal dies as a result of negligence. In *Carbasho v. Musulin*, which is distinguishable from this case as the Supreme Court of Appeals of West Virginia relied on state statutes based on the common law, the court cited to a string of out-of-state decisions and determined that "Our statutory law, as well as, this Court's decision in *Julian,* clearly establish that damages for sentimental value, mental suffering, and emotional distress are not recoverable for the death of a pet dog. Not only is that the law of this State, but it is also the general rule in a majority of jurisdictions." 618 S.E.2d 368, 371 (W. Va. 2005)(citing *Julian v. DeVincent*, 184 S.E.2d 535, 536 (W. Va. 1971)). In *Nichols v. Sukaro Kennels*, the Iowa Supreme Court affirmed a decision limiting damages for a poodle that was grievously injured to the plaintiff's medical expenses, and explained that it was following the majority of jurisdictions and would not allow mental distress damages for the injury or death of a pet. 555 N.W.2d 689, 691 (Iowa 1996). In *Koester v VCA Animal Hosp.*, the court found that emotional distress damages are not available for the loss of a dog, since emotional distress damages are not available for property damage, and the court stated that legislative action would be the proper course to follow to create a cause of action for loss of companionship for when a veterinarian negligently harms a pet. 624 N.W.2d 209, 211 (Mich. Ct. App. 2000).

Comment m to section 47 of The Restatement (Third) of Torts describes one of the public policy reasons why courts may choose to bar recovery for emotional distress related to negligent harm to pets. Restatement (Third) of Torts § 47 cmt. m (2012). The comment provides in pertinent part:

> While pets are often quite different from other chattels in terms of emotional attachment, an actor who negligently injures another's pet is not liable for emotional harm suffered by the pet's owner. This rule against liability for emotional harm secondary to injury to a pet limits the liability of veterinarians in the event of malpractice and serves to make veterinary services more readily available for pets. Although harm to pets (and chattels with sentimental value) can cause real and serious emotional harm in some cases, lines—arbitrary at times—that limit recovery for emotional harm are necessary.

*Id.*

5

As Ms. Hayes has argued, however, some courts in other jurisdictions have allowed emotional distress claims related to the injury or loss of a pet. *See McAdams v. Faulk*, 2002 WL 700956, *5 (Ark. Ct. App. Apr. 24, 2002) (allowing a negligence claim against a veterinarian involving a claim of mental suffering to proceed at the motion to dismiss stage); *see also Knowles Animal Hosp., Inc. v. Wills*, 360 So. 2d 37, 38 (Fla. Dist. Ct. App. 1978) (finding in an action involving gross negligence "that the court did not commit err [sic] by including for consideration of the jury the element of the mental pain and suffering of the plaintiff-owners of the dog.") In *Campbell v. Animal Quarantine Station*, 632 P.2d 1066, 1071 (Haw. 1981), the Supreme Court of Hawaii determined that emotional distress damages were permissible when the defendant negligently caused the death of the plaintiffs' dog. Hawaii, however, has "departed from the traditional standard and held that serious mental harm can be inflicted when a person endures negligently inflicted property damage." 632 P2d 1066, 1068 (Haw. 1981).

In *Golt v. Caffrey*, the Superior Court (Oxford County, *Warren J.*) examined the issue of whether the plaintiff should be able to recover for emotional distress against a veterinarian based on the deaths of her three dogs. OXFSC-CV-96-09 (Me. Super. Ct., Oxf. Cty., Mar. 17, 1999). The defendant in that case made the argument that dogs are considered property under Maine law, and Maine has never allowed for an emotional distress claim based upon destruction of property. *Id.* at 2. The court found that "this argument does not necessarily account for the special role that dogs may play in the owner's life and the suffering that an owner may endure upon the death of a beloved animal companion." *Id.* The court, however, agreed with the defendant's second argument that pet owners "should not receive more favorable treatment in terms of the recovery of damages for emotional distress than a parent would receive upon the death of a child." *Id.* After analyzing the facts of the plaintiff's case in light of the Law Court's decisions in *Cameron v. Pepin*, 610 A.2d 279, 284 (Me. 1992) and *Nelson v. Flanagan*, 677 A.2d 545 (Me. 1996), and determining that the plaintiff would not have been able to recover on an emotional distress claim based on bystander liability if her dogs were children, the court granted the defendant's motion in limine to exclude evidence of emotional distress, which thereby resulted in the dismissal of the plaintiff's negligent infliction of emotional distress claim. *Id.* at 3-5.

6

While it may be an exercise in futility, given the societal changes that have transpired in pet ownership since the late 1800s and early 1900s, it is worthwhile to undertake a similar analysis in this case

### a. Negligent infliction of emotional distress

In *Curtis v. Porter*, the law court noted that liability for claims of negligent infliction of emotional distress is "much more limited" than for claims of intentional infliction of emotional distress. 2001 ME 158, ¶ 17, 784 A2d 18. To prove negligent infliction of emotional distress a plaintiff must demonstrate: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Id.* ¶ 18. The Law Court noted, however, that it is difficult for plaintiffs to establish duty, since "there is no . . . general duty to avoid negligently causing emotional harm to others." *Id.* The Law Court has, however,

> recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed. We have also held that a claim for negligent infliction of emotional distress may lie when the wrongdoer has committed another tort. However, as we have recently held, when the separate tort at issue allows a plaintiff to recover for emotional suffering, the claim for negligent infliction of emotional distress is usually subsumed in any award entered on the separate tort.

*Id.* ¶ 19. To prevail on a negligent infliction of emotional distress claim, a plaintiff must also show "proof of severe emotional distress." *Id.* ¶ 20.

Lisbon Road argues that Ms. Hayes also cannot succeed on her negligent infliction of emotional distress claim because Ms. Hayes cannot show bystander liability or a special relationship that would allow her to recover. Ms. Hayes has claimed that she should be able to proceed because she has alleged a fiduciary relationship claim and a negligence claim.

Ms. Hayes would not be able to recover under a bystander liability theory even if the court treats Murphy like a person in its analysis. In *Culbert v. Sampson's Supermarket,*

7

*Inc.*, 444 A.2d 433, 438 (Me. 1982.), the court held that "a bystander may recover damages for serious mental distress foreseeably resulting from witnessing another person harmed by the tortfeasor's negligent act." The court noted that such distress "may be deemed foreseeable when the plaintiff bystander was present at the scene of the accident, suffered mental distress as a result of observing the accident and ensuing danger to the victim, and was closely related to the victim." *Id.* Furthermore, in *Cameron*, the court found that liability for indirect victims should be limited based upon policy considerations. 610 A.2d at 283-84 (Me. 1992); *see also Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 13, 711 A.2d 842. In *Nelson*, the court emphasized that the plaintiff is required to have "'suffered serious mental distress as a result of contemporaneously perceiving the accident.'" 677 A.2d 545, 548 (Me. 1996)(quoting *Cameron*, 610 A.2d at 284-85 (Me. 1992)).

Even if the court were to view Murphy as closely related to the victim, the court cannot find that Ms. Hayes "'suffered serious mental distress as a result of contemporaneously perceiving the accident.'" *Id.* Ms. Hayes has not claimed that she was present and "'contemporaneously perceive[ed]'" an injury to Murphy that is the basis for her claim. *Id.*

In addition, the court finds that Ms. Hayes would not be able to succeed on her negligent infliction claim, as she was not the direct victim. The court notes that the Law Court has previously recognized certain medical relationships as creating emotional duties. In *Bryan R. v. Watchtower Bible & Tract Soc. of New York, Inc.*, 1999 ME 144, ¶ 31, 738 A.2d 839 the court summarized three cases involving special relationships:

> *See, e.g., Bolton v. Caine*, 584 A.2d 615, 618 (Me.1990) (holding that a physician-patient relationship gives rise to a duty to avoid emotional harm from failure to provide critical information to patient); *Gammon v. Osteopathic Hosp. of Me.*, 534 A.2d 1282, 1285 (Me.1987) (holding that a hospital's relationship to the family of deceased gives rise to a duty to avoid emotional harm from handling of remains); *Rowe v. Bennett*, 514 A.2d 802, 806–07 (Me.1986) (holding that the unique nature of psychotherapist-patient relationship gives rise to a duty of care to the patient).

While this case involves a medical practitioner, it is distinguishable because the direct victim in this instance is Murphy. In a footnote, Ms. Hayes has asserted that Ms.

8

Hayes is the direct victim, since Murphy does not have standing to sue. The court disagrees and finds that Murphy was the direct victim in this instance. *See Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 6, 711 A.2d 842 ("A plaintiff is a direct victim if she was the object of the defendant's negligent conduct.") In *Golt*, the court held that while the plaintiff in that case "argue[d] forcefully" that she was the direct victim "[s]ince all of the dogs were her property and since the dogs cannot sue in their own right, the only legally cognizable injury is to [the plaintiff] . . . ," the court still could not allow a rule permitting the plaintiff to prevail when the parents in the *Cameron* case were unable to do so. OXFSC-CV-96-09 at 5 (citing *Cameron* 610 A.2d at 280 (Me. 1992)). In *Michaud v. Great N. Nekoosa Corp.*, the court clarified that "The 'direct victim' claiming negligent infliction of emotional distress may recover when the defendant's negligence was directed at the victim; namely, that the defendant owed the victim an independent duty of care and that the defendant should have foreseen that mental distress would result from his negligence." 1998 ME 213, ¶ 16, 715 A.2d 955. The court then stated that an indirect victim can only recover under a bystander liability theory. *Id.*

Lastly, the court finds that this is an instance where larger policy implications, as described in the Restatement, weigh against Ms. Hayes' negligent infliction of emotional distress claim, even in light of her separate fiduciary duty and negligence claims. *See Cameron*, 610 A.2d at 282 (Me. 1992); Restatement (Third) of Torts § 47 cmt. m.

### b. Loss of companionship and intrinsic value

Lisbon Road contends that Ms. Hayes is attempting to create a cause of action for Murphy analogous to a wrongful death action for a person. *See* 18-A M.R.S.A. § 2-804(b) (permitting the award of damages "for the loss of comfort, society and companionship of the deceased, including any damages for emotional distress arising from the same facts as those constituting the underlying claim . . . .") It is clear from the wording of the wrongful deaths statute that it pertains to "the death of a person". § 2-804(a)-(b). Under the Probate Code, a "person" is defined as "an individual, a corporation, an organization, or other legal entity." § 1-201(29). A dog fails to meet the definition.

In *Strickland v. Medlen*, where a shelter employee euthanized an escaped dog that was supposed to be held for its owner, the Texas Supreme Court explained why it was not permitting a loss of companionship claim or emotionally based damages:

Loss of companionship, the gravamen of the Medlens' claim, is fundamentally a form of *personal-injury* damage, not property damage. It is a component of loss of consortium, including the loss of love, affection, protection, emotional support, services, companionship, care, and society. Loss-of-consortium damages are available only for a few especially close family relationships, and to allow them in lost pet cases would be inconsistent with these limitations. Therefore, like courts in the overwhelming majority of other states, the Restatement of the Law of Torts, and the other Texas courts of appeals that have considered this question, we reject emotion-based liability and prohibit recovery for loss of the human-animal bond.

*Strickland v Medlen*, 397 SW3d 184, 191-92 (Tex. 2013) (citations and quotations omitted).

The court finds that Ms. Hayes' loss of companionship and intrinsic value claim fails to state a claim upon which relief can be granted. She cannot bring a wrongful death action for Murphy.

The court notes that it is making the decision to dismiss these two claims at an early stage. While the court could have waited to dispose of these claims until the summary judgment stage, the court is able to find at this juncture that both of the claims at issue fail to state legally cognizable claims. Waiting to make a determination on these two claims, which the court finds are unsustainable, would be simply kicking the proverbial can down the road.

Accordingly, the court **ORDERS** that Defendant's Motion for Judgment on the Pleadings for Counts IV and VII is GRANTED and Counts IV and VII are dismissed.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: December 19, 2014

MaryGay Kennedy
Justice, Superior Court

10

LINDSY HAYES - PLAINTIFF

Attorney for: LINDSY HAYES
MIC^EL BOSSE - RETAINED
BE    TEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029


vs
LISBON ROAD ANIMAL HOSPITAL - DEFENDANT

Attorney for: LISBON ROAD ANIMAL HOSPITAL
BARRI BLOOM - RETAINED 01/14/2014
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS STREET
PO BOX 9545
PORTLAND ME 04112-9545

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No AUBSC-CV-2013-00168

**DOCKET RECORD**

Filing Document: COMPLAINT          Minor Case Type: OTHER NEGLIGENCE
Filing Date: 12/06/2013

## Docket Events:

12/06/2013 FILING DOCUMENT - COMPLAINT FILED ON 12/06/2013

12/06/2013 Party(s):  LINDSY HAYES
           ATTORNEY - RETAINED ENTERED ON 12/06/2013
           Plaintiff's Attorney: MICHAEL BOSSE

01/14/2014 Party(s):  LISBON ROAD ANIMAL HOSPITAL
           RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 01/14/2014

01/14/2014 Party(s):  LISBON ROAD ANIMAL HOSPITAL
           ATTORNEY - RETAINED ENTERED ON 01/14/2014
           Defendant's Attorney: BARRI BLOOM

01/14/2014 ORDER - SCHEDULING ORDER ENTERED ON 01/14/2014
           MARYGAY  KENNEDY , JUDGE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL

01/14/2014 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 09/14/2014

01/14/2014 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 01/14/2014
           MARYGAY  KENNEDY , JUDGE

02/28/2014 Party(s):  LINDSY HAYES
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 02/28/2014
           TO RESPOND TO INTERROGATORIES BY 14 DAYS, WITH PROPOSED ORDER AND REQUEST FOR HEARING

03/03/2014 Party(s):  LINDSY HAYES,LISBON ROAD ANIMAL HOSPITAL
           LETTER - FROM PARTY FILED ON 03/03/2014
           NO OBJECTION TO MOTION TO EXTEND TIME